UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———————

| | | |
|---|---|---|
| MAXIMO J. GARZA, III, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:14-cv-1150 |
| | ) | |
| v. | ) | Honorable Janet T. Neff |
| | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## REPORT AND RECOMMENDATION

This is a social security action brought under 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of a final decision of the Commissioner of Social Security denying plaintiff's claims for disability insurance benefits (DIB) and supplemental security income (SSI) benefits.    On September 11, 2012, plaintiff filed his application for DIB benefits.   (PageID.193-94).    On May 28, 2013, he filed his application for SSI benefits.   (PageID.219-26).   In both applications for benefits, plaintiff alleged an April 5, 2011, onset of disability.[1]   (PageID.193, 219). Plaintiff's claims were denied on initial review.   (PageID.125-35).   On September

_____

[1]SSI benefits are not awarded retroactively for months prior to the application for benefits.   20 C.F.R. § 416.335; *see Kelley v. Commissioner*, 566 F.3d 347, 349 n.5 (3d Cir. 2009); *see also   Newsom v. Social Security Admin.*, 100 F. App'x 502, 504 (6th Cir. 2004).   The earliest month in which SSI benefits are payable is the month after the application for SSI benefits is filed.   Thus, June 2013 is plaintiff's earliest possible entitlement to SSI benefits.

9, 2013, plaintiff received a hearing before an ALJ, at which he was represented by counsel.   (PageID.76-123).   On October 11, 2013, the ALJ issued his decision finding that plaintiff was not disabled.   (PageID.56-71).   On September 19, 2014, the Appeals Council denied review (PageID.30-33), and the ALJ's decision became the Commissioner's final decision.

Plaintiff filed a complaint seeking judicial review of the Commissioner's decision.   Plaintiff asks the Court to overturn the Commissioner's decision on the following grounds:

1.   The ALJ erred by "failing to properly evaluate" whether plaintiff met the requirements of listing 1.04A.

2.   The ALJ erred by failing to consult a medical expert before determining that plaintiff's back impairment did not equal the requirements of listing 1.04A.

(Plf. Brief at 1, ECF No. 13, PageID.583).   Upon review of the record, and for the reasons stated herein, I recommend that the Commissioner's decision be affirmed.

## Standard of Review

When reviewing the grant or denial of social security benefits, this Court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law.   *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001).   Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"   *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*,

402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007). The scope of the Court's review is limited. *Buxton*, 246 F.3d at 772. The Court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Ulman v. Commissioner*, 693 F.3d 709, 713 (6th Cir. 2012); *Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Gayheart v. Commissioner*, 710 F.3d 365, 374 (6th Cir. 2013)("A reviewing court will affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would have supported the opposite conclusion."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Kyle v. Commissioner*, 609 F.3d 847, 854 (6th Cir. 2010).

## Discussion

The ALJ found that plaintiff met the disability insured requirement of the Social Security Act from April 5, 2011, through the date of the ALJ's decision.   (Op. at 3, PageID.58).   Plaintiff had not engaged in substantial gainful activity on or after April 5, 2011, his alleged onset of disability.   (*Id.*).   Plaintiff had the following severe impairments:   "degenerative disc disease lumbar spine status-post surgery and depression."   (*Id.*).   The ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the listing of impairments.   (*Id.* at 5-6, PageID.60-61).   The ALJ found that plaintiff retained the residual functional capacity (RFC) for a limited range of light work:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he requires a sit/stand option, is limited to simple, routine tasks, and no fast-paced jobs or production quota-type jobs.

(Op. at 6, PageID.61).

The ALJ found that plaintiff's testimony regarding his subjective complaints was not fully credible.   (*Id.* at 6-12, PageID.61-67).   Plaintiff was unable to perform any past relevant work.   (*Id.* at 14, PageID.69).   Plaintiff was 31 years old as of his alleged onset of disability and 33 years old as of the date of the ALJ's decision. Thus, plaintiff was classified as a younger individual at all times relevant to his claims for DIB and SSI benefits.   (*Id.*).   Plaintiff has a limited education and is able to communicate in English.   (*Id.*).   The ALJ found that the transferability of job skills was not material to the determination of disability.   (*Id.*).

- 4 -

The ALJ then turned to the testimony of a vocational expert (VE). In response to a hypothetical question regarding a person of plaintiff's age, and with his RFC, education, and work experience, the VE testified that there were approximately 7,500 jobs in Michigan that the hypothetical person would be capable of performing. (PageID.116-18). The ALJ found that this constituted a significant number of jobs. Using Rule 202.18 of the Medical-Vocational Guidelines as a framework, the ALJ held that plaintiff was not disabled. (Op. at 15-16, PageID.70-71).

## 1.

Plaintiff argues that he meets the requirements of listing 1.04A and that the ALJ "failed to properly analyze" whether his physical impairments met or equaled the requirements of listing 1.04A. (Plf. Brief at 13-17, PageID.595-99; Reply Brief at 1-3, PageID.622-24)). Step 3 of the sequential analysis regulates a "narrow category of adjudicatory conduct." *Combs v. Commissioner*, 459 F.3d 640, 649 (6th Cir. 2006) (*en banc*). It "governs the organization and evaluation of proof of listed impairments that, if supported, renders entitlement to benefits a foregone conclusion."[2] *Id.* "Claimants are conclusively presumed to be disabled if they suffer

---

[2] Steps 2 and 3 work in combination to streamline the administrative review process by identifying the claims that are clearly meritless and those claims that clearly warrant an award of benefits. Claims that are "totally groundless" from a medical standpoint are eliminated at step 2. *See Higgs v. Bowen*, 880 F.2d 860, 862-63 (6th Cir. 1988). Step 3 is used to identify "those claimants whose medical impairments are so severe that it is likely that they would be found disabled regardless of their vocational background." *Combs*, 459 F.3d at 649 (quoting *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987)).

from an infirmity that appears on the [Social Security Administration's] SSA's special list of impairments, or that is at least equal in severity to those listed. The list identifies and defines impairments that are of sufficient severity as to prevent any gainful activity. A person with such an impairment or an equivalent, consequently, necessarily satisfies that statutory definition of disability." *Id.* at 643 (internal citations omitted).

A claimant has the burden of demonstrating that he satisfies all the individual requirements of a listing. *See Elam*, 348 F.3d at 125; *see also Perschka v. Commissioner*, 411 F. App'x 781, 786-87 (6th Cir. 2010). "If all the requirements of the listing are not present, the claimant does not satisfy that listing." *Berry v. Commissioner*, 34 F. App'x 202, 203 (6th Cir. 2002). An impairment satisfies a listing only when it manifests the specific findings described in the medical criteria for that particular impairment. *See Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001); 20 C.F.R. §§ 404.1525(c), 416.925(c); *see also Lusk v. Commissioner*, 106 F. App'x 405, 411 (6th Cir. 2004) ("Substantial evidence exists to support a finding that the claimant does *not* meet the listing if there is a lack of evidence indicating the existence of all of the requirements of a listed impairment."). "It is insufficient that a claimant comes close to satisfying the requirements of a listed impairment." *Elam*, 348 F.3d at 125.

It is possible for a claimant to provide evidence of a medical equivalent to a listing. 20 C.F.R. §§ 404.1526, 416.926. "To demonstrate such a medical equivalent, the claimant must present medical findings equal in severity to *all* the criteria for

- 6 -

the one most similar listed impairment." *Bailey v. Commissioner*, 413 F. App'x 853, 854 (6th Cir. 2011) (citing *Sullivan v. Zebley*, 493 U.S. 521, 531(1990) (emphasis in original)); *Thacker v. Social Security Admin.*, 93 F. App'x 725, 728 (6th Cir. 2004) ("When a claimant alleges that he meets or equals a listed impairment, he must present specific medical findings that satisfy the various tests listed in the description of the applicable impairment or present medical evidence which describes how the impairment has such equivalency.") (citing *Evans v. Secretary of Health & Human Servs.*, 835 F.2d 161, 164 (6th Cir. 1987)).

Listing 1.04 for disorders of the spine contains the following requirements:

1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord.   With:

A.      Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or

B.      Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or

C.      Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04.

Plaintiff made no attempt to satisfy his burden of establishing that he met or equaled all the requirements of listing 1.04A.   The certified administrative record contains no prehearing brief from plaintiff's attorney arguing that plaintiff met or equaled the requirements of any listed impairment.   Prehearing correspondence from the Social Security Administration emphasized that the administrative hearing was plaintiff's "time to explain why [he] believe[d] the ALJ should decide the issues in [his] favor." (PagID.155).   Further, the Administration explained that the hearing was plaintiff's representative's opportunity to state plaintiff's case and give written statements about the facts and law.[3]   (PageID.166).   Plaintiff's attorney presented no argument at the hearing that plaintiff met or equaled the requirements of any listed impairment.[4]   (PageID.76-123).

Plaintiff's challenge to the ALJ's findings is limited to the ALJ's step 3 finding regarding listing 1.04A.   The ALJ found that plaintiff did not meet or equal the requirements of listing 1.04 because plaintiff did not satisfy the severity requirements in subsections A, B, or C:

> The claimant does not have compromise of a nerve root or spinal cord with evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis resulting in pseudoclaudication.   Moreover, the claimant retained the ability to ambulate effectively.   Therefore, it is found that the severity

---

[3] *See* 20 C.F.R. §§ 404.949, 416.1449.

[4] The absence of such an argument is not particularly surprising on this record. None of plaintiff's treating or examining physicians offered an opinion or even suggested that plaintiff's back impairment might be of listing-level severity.   There is no evidence in the record indicating that plaintiff requested a consultative examination to address whether his back impairment met or equaled a listed impairment.   *See* 20 C.F.R. §§ 404.1519a, 416.919a.

of claimant's back impairment does not meet or equal the criteria set forth understanding listing 1.04.

(Op. at 5, PageID.60).

Plaintiff argues on appeal that the ALJ's decision should be overturned because the ALJ's discussion with regard to listing 1.04A was inadequate. (Plf. Brief at 12-17, PageID.594-99) (citing *Reynolds v. Commissioner*, 424 F. App'x 411, 416 (6th Cir. 2011). In *Reynolds*, the Sixth Circuit overturned an ALJ's decision because his opinion provided a mere a one-sentence conclusion that the claimant did "not have an impairment or combination of impairments which, alone or in combination, me[t] section[] 1.00." 424 F. App'x at 415. Here, by contrast, the ALJ explained why plaintiff did not satisfy any of the severity requirements of listing 1.04. In addition, the Sixth Circuit's more recent opinions have "declined to require remand whenever an ALJ provides minimal reasoning at step three of the five-step inquiry." *Wilson v. Colvin*, No. 3:13-cv-710, 2015 WL 1396736, at * 3 (E.D. Tenn. Mar. 26, 2015) (citing *Forrest v. Commissioner*, 591 F. App'x 359, 364-66 (6th Cir. 2014) and *Malone v. Commissioner*, 507 F. App'x 470, 472 (6th Cir. 2012)).[5]

In *Forrest*, for example, the Sixth Circuit rejected the plaintiff's arguments that a "sparse step-three analysis" required remand either because it failed to follow agency regulations and denied Forrest an important procedural right or because the ALJ's failure to explain his findings precluded substantial evidence review. 591 F.

---

[5] In *Malone*, the Sixth Circuit likewise rejected an argument by the plaintiff that the ALJ failed to make sufficiently specific findings at step 3 where the plaintiff's attorney failed to argue at the hearing that plaintiff met the requirements of a listed impairment. 507 F. App'x at 472.

App'x at 364.   The Sixth Circuit "decline[d] Forrest's invitation to extend *Wilson [v. Commissioner*, 378 F.3d 541 (6th Cir. 2004)] to require remand when the ALJ provides minimal reasoning at step three of the five-step inquiry, especially where Forrest did not argue at the hearing that he met a particular listing. Importantly, the regulations governing the five-step inquiry require only that the ALJ 'consider all evidence in [the claimant's] case record,' 20 C.F.R. § 404.1520(a)(3), and, at step three, 'consider the medical severity of [the claimant's] impairment(s),' *id.* § 404.1520(a)(4)(iii). *See Bowie[v. Commissioner]*, 539 F.3d [395,] 400 [6th Cir. 2008)] (distinguishing requirement that ALJ 'consider' from requirement that he give 'good reasons')."   *Forrest*, 591 F. App'x at 365.   In addition, the Sixth Circuit observed that the ALJ's failure to provide detailed analysis at step three is not a basis for relief if the ALJ "made sufficient factual findings elsewhere in his decision to support his conclusion at step three."   *Id.* at 366.   There is "no need to require the ALJ to spell out every fact a second time." *Id.*   Here, the ALJ discussed the medical record in detail and articulated ample support for his determination that plaintiff did not satisfy listing 1.04A.   (Op. at 5, 7-14 PageID.60, 62-69).

Moreover, the Sixth Circuit recognizes that any error with respect to the ALJ's step three analysis is harmless unless the claimant can establish that he satisfied the listing in question.   *Forrest*, 591 F. App'x at 366; *see also Chappell v. Commissioner*, No. 1:14-cv-1005, 2015 WL 4065261, at * 4 (W.D. Mich. July 2, 2015). No treating or examining physician has offered an opinion that plaintiff's back

impairment meets or equals the requirements of listing 1.04A.   Plaintiff's argument that he met the requirements of listing 1.04A is not persuasive.

Listing 1.04A requires, among other things, "Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)."   20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04A.

Plaintiff alleged an April 5, 2011, onset of disability.   He testified that, on that date, he sustained a work-related injury.[6] (PageID.98).   Plaintiff had a remote history of back surgery, approximately eleven years before his alleged onset of disability.   He indicated that after this surgery, he had no pain or dysfunction and made a complete recovery.   (PageID.94-98, 334, 350, 357, 402).

X-rays taken of plaintiff's lumbar spine on April 11, 2011, showed "mild" disc space narrowing posteriorly at L5-S1.   There was "no evidence of scoliosis, compression fracture or spondylolisthesis."   (PageID.332).   X-rays taken of plaintiff's thoracic spine showed that the vertebral body heights and alignment were

---

[6] Plaintiff reported to medical care providers that, while he had been working for Siemens Corp. on April 5, 2011, he felt an acute onset of back pain while lifting a 200 pound steel pressure plate.   (PageID.334).   The VE testified that a sandblaster job is typically performed at the medium exertional level, but as plaintiff performed it, per his testimony, it was performed at the heavy exertional level. (PageID.90). The redemption order from plaintiff's worker's compensation lawsuit shows that on April 12, 2012, he received $134,502.40. (PageID.192).   The ALJ noted that plaintiff continued to collect unemployment insurance benefits throughout 2012.   (Op. at 7, PageID.62).

preserved.   The intervertebral disc space heights appeared normal.   The neural foramina were patent and plaintiff's paraspinal soft tissues appeared normal. (PageID.333).   Doctors offered a diagnosis of a thoracic and lumbosacral strain (PageID.308) or a backache, NOS.   (PageID.403).   Subsequent MRIs were interpreted as showing a small, recurrent disc herniation at L5-S1, which was amenable to surgical correction.   (PageID.334, 341, 343, 362, 404, 407-08, 514-15, 561-62).

Plaintiff elected not to have the recommended surgery.   (PageID.103). When plaintiff elected to forego surgery to relieve the discomfort that he was reporting, his treating physician terminated all his prescriptions for narcotic pain medication.   (PageID.370-71).   Plaintiff's EMG and nerve conduction study were normal.   (Page.ID.345-47).   He did not have muscle atrophy and there was generally no evidence of muscle weakness.[7]   (PageID.334, 351, 354, 357, 371, 374, 377, 416, 420, 455, 459-60, 517-18, 568).   The ALJ's finding that plaintiff did not meet or equal the requirements of listing 1.04A is supported by more than substantial evidence.

---

[7] The objective medical evidence required to establish atrophy and weakness under this listing is very demanding and it is not satisfied by subjective statements.   *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00D.   In addition, "because abnormal physical findings may be intermittent, their presence must be established by a record of ongoing management and evaluation."   *Id.*; *see Yettaw v. Commissioner*, No. 13-15091, 2015 WL 349190, at * 8-9 (E.D. Mich. Jan. 26, 2009); *Reed v. Commissioner*, No. 07-15275, 2009 WL 877691, at * 7-8 (E.D. Mich. Mar. 30, 2009); *Franks v. Commissioner*, No. C-1-06-810, 2008 WL 648719, at * 5-6 (S.D. Ohio Mar. 10, 2008).

**2.**

Plaintiff argues that the record is devoid of a medical expert opinion on the issue of equivalence, and that under SSR 96-6p this requires reversal of the Commissioner's decision because the ALJ failed to properly evaluate whether plaintiff equaled listing 1.04A.   (Plf. Brief at 17-19, PageID.599-601; Reply Brief at 4, PageID.625).   Upon review, I find no basis for disturbing the Commissioner's decision.

As previously noted in section 1, plaintiff had the burden at step 3 of the sequential analysis to present evidence and argument establishing that he met or equaled the requirements of listing 1.04A.   Plaintiff made no attempt to satisfy his burden.   The medical evidence that he presented in support of his claims did not include any opinion by an acceptable medical source indicating that plaintiff had impairments equivalent in severity to the criteria of any listed impairment, individually or in combination.   Plaintiff did not satisfy his burden by ignoring it. *See Curler v. Commissioner*, 561 F. App'x 464, 475 (6th Cir. 2014); *Hayes v. Commissioner*, No. 1:09-cv-1107, 2011 WL 2633945, at * 5 (W.D. Mich. June 15, 2011).

Plaintiff was represented by counsel.   His attorney made no argument that ALJ should postpone his decision on the merits of plaintiff's claims because those claims had been denied on initial review under the single decisionmaker model, and thus the record presented to the ALJ did not include a medical expert opinion on the

issue of equivalence.[8]   Instead, plaintiff's attorney allowed the matter to proceed to a decision on the merits.   Now, after the claims were denied, plaintiff raises an issue on appeal in this Court that should have been raised and preserved long ago during the administrative process.   Courts generally do not tolerate sandbagging. *See, e.g., Carson v. Hudson*, 421 F. App'x 560, 563 (6th Cir. 2011); *Davis-Gordy v. Commissioner*, No. 1:11-cv-243, 2013 WL 5442418, at * 7 (W.D. Mich. Sept. 30, 2013); *Frederick v. Commissioner*, No. 10-11349, 2011 WL 1518966, * 9 (E.D. Mich. Mar. 25, 2011) (collecting cases).

Plaintiff's appellate argument would be more compelling if it had been presented to the Court in the context of a request for remand under sentence six of 42 U.S.C. § 405(g), *and* if it were accompanied by an opinion from an acceptable medical source offering his or her opinion that, during the period at issue on plaintiff's claims for DIB and SSI benefits, plaintiff had an impairment or combination of impairments that met or equaled the requirements of listing 1.04A. Plaintiff offers no such evidence or argument.

Even assuming, however, that plaintiff had presented medical evidence describing how his impairment was equivalent to listing 1.04A, such an opinion would have been entitled to consideration, but not any particular weight.   *See* 20 C.F.R. §§ 404.1527(d)(2), (3), 416.927(d)(2), (3).   Whether an impairment equals a

---

[8] The hearing transcript reveals that plaintiff's attorney had no objections to the evidence in this case and that there were no other documents that plaintiff wanted to present in support of his claims for DIB and SSI benefits.   (PageID.78-79).   At the conclusion of the administrative hearing, plaintiff's counsel noted that the record was "complete."   (PageID.122-23).

listed impairment is an administrative issue reserved to the Commissioner, not a medical determination. *See Zaph v. Commissioner*, No. 97-3496, 1998 WL 252764, at * 2 (6th Cir. May 11, 1998) ("[T]he issue of whether an individual's impairment is equivalent to a listed impairment is an administrative finding, not a medical one.").

Plaintiff's argument that remand is required is based on a social SSR 96-6p, a ruling which the Social Security Administration adopted on July 2, 1996. *See Policy Interpretation Ruling for Titles II and XVI: Consideration of Administrative Findings of Fact by State Agency Medical and Psychological Consultants and Other Program Physicians and Psychologists at the Administrative Law Judge and Appeals Council Levels of Administrative Review; Medical Equivalence* (SSA July 2, 1996) (reprinted at 1996 WL 374180). The Administration defined the purpose of this ruling as follows: "To clarify Social Security Administration policy regarding the consideration of findings of fact by State agency medical and psychological consultants and other program physicians and psychologists by adjudicators at the administrative law judge and Appeals Council levels." 1996 WL 374180, at * 1. On its face, SSR 96-6p does not appear to apply because there was no finding of fact made by a medical consultant to consider or that required updating because plaintiff's claims for DIB and SSI benefits had been denied on initial review on December 28, 2012 (PageID. 135) under the "single decisionmaker" (SDM) model.

The SDM model was designed to streamline administrative review of disability claims. Under this model, the single decisionmaker assumes primary responsibility for processing the claimant's application for disability, including

- 15 -

making the initial disability determination. The process is further streamlined in that a claimant who disagrees with the initial determination is permitted to skip the reconsideration level of the administrative review process and immediately request a hearing before an ALJ. 20 C.F.R. §§ 404.906, 416.1406; *see White v. Commissioner*, No. 12-cv-12833, 2013 WL 4414727, at * 8 (E.D. Mich. Aug. 14, 2013).

The regulations authorizing the SDM model did not appear in the Code of Federal Regulations until 1997, a year after SSR 96-6p had been adopted. Nevertheless, the final rules authorizing the SDM model were published in the Federal Register on April 24, 1995, and they went into effect on that date -- more than a year before SSR 96-6p was adopted. *See* Testing Modifications to the Disability Determination Procedures, 60 Fed. Reg. 20023-01 (April 24, 1995). It is logical to assume that the Social Security Administration was aware of its then-new regulations authorizing the SDM model when it adopted SSR 96-6p. To the extent that any provision of SSR 96-6p conflicts with applicable regulations, however, the regulations must control.[9] *See Paxton v. Secretary*, 856 F.2d 1352, 1356 (9th Cir. 1988).

---

[9] Social security rulings purport to interpret applicable regulations. *See Ferguson v. Commissioner*, 628 F.3d 269, 272 (6th Cir. 2010). "Social Security Rulings do not have the force and effect of law, but are "binding on all components of the Social Security Administration" and represent "precedent final opinions and orders and statements of policy and interpretations" adopted by the Commissioner. 20 C.F.R. § 402.35(b)(1). In *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 549 (6th Cir. 2004), the court refrained from ruling on whether Social Security Rulings are binding on the Commissioner in the same way as Social Security Regulations, but *assumed* that they are." 628 F.3d at 272 n.1.

The "public comments" section of Federal Register announcement of the new SDM rules addressed concerns of some commentators "regarding the apparent lack of involvement of the medical consultant in making disability determinations because the medical consultant would not be required to sign the disability determination forms used to certify the determination of disability to us." 60 Fed. Reg. at 20025.   The Administration's response acknowledged that there would be cases without a medical consultant opinion.   The decisionmaker would consult with a medical consultant when the decisionmaker determined that a consultation was appropriate.   *See* 60 Fed. Reg. at 20025.

SSR 96-6p acknowledges that the issue of equivalence is an administrative issue that is "reserved to the Commissioner[.]"[10] 1996 WL 374180, at * 3 (citing 20 CFR §§ 404.1527(e) and 416.927(e)[11] and SSR 96-5p).   "The administrative law judge or Appeals Council is responsible for deciding the ultimate legal question whether a listing is met or equaled.   As trier of the facts, an administrative law judge or the Appeals Council is not bound by a finding by a State agency medical or psychological consultant or other program physician or psychologist as to whether

---

[10] "For cases at the administrative law judge or Appeals Council level, the responsibility for deciding medical equivalence rests with the administrative law judge or the Appeals Council."   20 C.F.R. §§ 404.1526(e), 416.926(e).

[11] Regulations reserving equivalence and other issues to the Commissioner now appear at 20 C.F.R. §§ 404.1527(d) and 416.927(d).   SSR 96-5p further underscores that the issue of equivalence is reserved to the Commissioner.   *See Policy Interpretation Ruling Titles II and XVI:   Medical Source Opinions on Issues Reserved to the Commissioner*, 96-5p (SSA July 2, 1996) (reprinted at 1996 WL 374183).

an individual's impairment(s) is equivalent in severity to any impairment in the Listing of Impairments." 1996 WL 374180, at * 3.

The issue before the Court is what to make of the sentence in SSR 96-6p which states that a "longstanding policy requires that the judgment of a physician (or psychologist) designated by the Commissioner on the issue of equivalence on the evidence before the administrative law judge or the Appeals Council must be received into the record as expert opinion evidence and given appropriate weight." 1996 WL 374180, at * 3. This statement is immediately followed by a sentence emphasizing that the "signature of a State agency medical or psychological consultant on a SSA-831-U5 (Disability Determination Transmittal Form) . . . ensures that consideration by a physician (or psychologist) designated by the Commissioner has been given the question of medical equivalence and at the initial and reconsideration levels of administrative review." 1996 WL 374180, at * 3.

Suffice it to say that this aspect of SSR 96-6p is extremely difficult to reconcile with SDM regulations that eliminated the requirement for obtaining such signed written statements and eliminated the reconsideration level of administrative review. 20 C.F.R. §§ 404.906(b)(2),(4), 416.1406(b)(2),(4). SSR 96-6p becomes even more muddled in the SDM context when it lists circumstances under which an ALJ must obtain an updated opinion from a medical expert. 1996 WL 374180, at * 3 n.2 (citing 20 CFR §§ 404.1512(b)(6), .1527(f), 416.927(b)(6), .927(f)). Sections 404.1512(b)(6) and 416.927(b)(6) (now found at sections 404.1512(b)(vi) and 416.927(b)(vi)) simply include opinions of State agency physicians and psychologists

within the definition of evidence.   The regulations that had been found at 20 C.F.R. §§ 404.1527(f) and 416.927(f) are now found in subsection (e), and they plainly *do not require* that an ALJ consult with a medical expert before making his finding that plaintiff did not meet or equal the requirements of a listed impairment.   *See Stevens v. Commissioner*, No. 1:12-cv-977, 2014 WL 357307, at * 5-6 (W.D. Mich. Jan. 31, 2014); *see also Felt v. Commissioner*, No. 1:13-cv-1023, 2015 WL 5432639, at * 2-3 (W.D. Mich. Sept. 15, 2015); *O'Neill v. Colvin*, No. 1:13-cv-867, 2014 WL 3510982, at * 17-18 (N.D. Ohio July 9, 2014); *Wredt ex rel. E. E. v. Colvin*, No. 4:12-cv-77, 2014 WL 281307, at * 7 (E.D. Tenn. Jan. 23, 2014).

The regulations allow an ALJ to call a medical expert to explain medical records but do not require him to do so.   "Administrative law judges may [] ask for and consider opinions from medical experts on the nature and severity of your impairment(s) and on whether your impairment(s) equals the requirements of any impairment listed in appendix 1 to this subpart."   20 C.F.R. §§ 404.1527(e)(2)(iii), 416.927(e)(2)(iii).

On August 30, 1999, the Social Security Administration published a notice that the SDM model would go into effect in Michigan on or about October 1, 1999. *See* Modifications to the Disability Determination Procedures; Disability Claims Process Redesign Prototype, 64 Fed. Reg. 47218-01 (Aug. 30, 1999).   The SDM program was extended in 2002, 2003, 2006, 2009, 2012, 2013, 2014, and 2015.   It will continue through at least September 23, 2016. *See* Modifications to the Disability Determination Procedures; Extension of Testing of Some Disability

Redesign Features, 67 Fed. Reg. 75895-01 (Dec. 10, 2002); 68 Fed. Reg. 38737-03 (June 30, 2003); 71 Fed. Reg. 45890-01 (Aug 10, 2006); 74 Fed. Reg. 48797-01 (Sept. 24, 2009); 77 Fed. Reg. 35464-01 (June 13, 2012); 78 Fed. Reg. 45010-03 (July 25, 2013); 79 Fed. Reg. 39453-01 (July 10, 2014); 80 Fed. Reg. 47553-03 (Aug. 7, 2015). Although Michigan has operated under the SDM model for 16 years, the argument that SSR 96-6p requires a medical opinion on the issue of equivalence at Step III in SDM cases is a relatively recent development, particularly here in the Western District of Michigan.

Eastern District of Michigan decisions are not binding on this Court. *See Michigan Elec. Employees Pension Fund v. Encompass Elec. & Data, Inc.*, 556 F. Supp.2d 746, 761-62 (W.D. Mich. 2008); *see also White v. Commissioner*, No. 1:13-cv-172, 2014 WL 1028888, at * 6 n.6 (W.D. Mich. Mar. 17, 2014). Decisions from the Eastern District reflect disagreement concerning SSR 96-8p's statement regarding the need for a medical opinion on equivalence. Cases such as *Gallagher v. Commissioner*, No. 10-cv-12498, 2011 WL 3841632, at * 8-9 (E.D. Mich. Mar. 29, 2011) and *Timm v. Commissioner*, No. No. 10-cv-10594, 2011 WL 846059, at * 4 (E.D. Mich. Feb. 14, 2011) find no error because under the regulations, the ALJ is authorized to make a disability determination without a medical consultant opinion. Other Eastern District cases such as *Fensterer v. Commissioner*, No. 12-13166, 2013 WL 4029049, at * 8-9 (E.D. Mich. Aug. 7, 2013) and *McPhee v. Commissioner*, No. 12-cv-13931, 2013 WL 3224420, at * 15-16 (E.D. Mich. June 25, 2013), hold that it is an error requiring remand as a matter of course.

I find that the latter cases are not persuasive because they fail to give adequate consideration to the structure of the sequential analysis under the social security regulations which firmly place the burden at step 3 on the plaintiff.   *See Jones v. Commissioner*, 336 F.3d at 474; *Walters v. Commissioner*, 127 F.3d at 529; *Lusk v. Commissioner*, 106 F. App'x at 411; *see also Forrest v. Commissioner*, 591 F. App'x 359, 366 (6th Cir. 2014).   Moreover, a harmless error standard applies here.[12] *See Forrest*, 591 F. App'x at 366; *Rabbers v. Commissioner*, 582 F.3d 647, 654 (6th Cir. 2009) ("[C]ourts are not required to convert judicial review of agency action into a ping-pong game where remand would be an idle and useless formality.") (citations and quotations omitted); *accord Ulman v. Commissioner*, 693 F.3d 709, 714 (6th Cir. 2012).   "If an agency has failed to adhere to its own procedures, [the Court] will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses."   *Rabbers*, 582 F.3d at 654.   Where, as here, the plaintiff was represented at the administrative hearing by an attorney and the plaintiff made no attempt to satisfy his burden at step 3 by presenting both argument and evidence on the issue of equivalence, any error the ALJ may have committed by not obtaining an opinion on the equivalence issue was harmless.

---

[12] In *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009), the Supreme Court observed that the harmless error standard is intended to "prevent appellate courts from becoming impregnable citadels of technicality."

## Recommended Disposition

For the reasons set forth herein, I recommend that the Commissioner's decision be affirmed.


Dated:    November 25, 2015    /s/   Phillip J. Green
                               United States Magistrate Judge


## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.    28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).   All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).   Failure to file timely and specific objections may constitute a waiver of any further right of appeal.   *See Thomas v. Arn*, 474 U.S. 140 (1985); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008).   General objections do not suffice.   *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).